BARRETT v. O'BRIEN (two cases).

(Circuit Court of Appeals, Seventh Circuit. May 20, 1915.)

Nos. 2058, 2059.

TAXATION ⊂⊃378—ASSESSMENT—CORPORATIONS—STATUTE.

    Laws Ind. 1893, c. 170, § 7, requiring the state tax commissioners, in assessing an express company, to ascertain the true cash value of the entire property owned by the corporation, for that purpose taking the aggregate value of all its shares of capital stock in case such shares have a market value, and in case they have none taking the actual value thereof, does not require the commissioners to be governed by the market value of a few shares of the stock, and where there is a market value for all

the stock not as a single lot but in the aggregate cannot be found, its actual value may be resorted to.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 626–628, 632; Dec. Dig. ☞378.]

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Separate suits for injunction by William M. Barrett, president of the Adams Express Company, against William H. O'Brien, Auditor of the State of Indiana. Decrees for defendant, and complainant appeals. Affirmed.

Joseph S. Graydon, of Cincinnati, Ohio, for appellant.

Richard M. Milburne, of Jasper, Ind., and James E. McCullough, of Indianapolis, Ind., for appellee.

Before SEAMAN, KOHLSAAT, and MACK, Circuit Judges.

MACK, Circuit Judge. Appellant, in the two cases, sought to enjoin the enforcement of the alleged excessive amount of taxes levied against it for the years 1909 and 1910, respectively, on the ground that the state board of commissioners of Indiana acted illegally in determining the true cash value of appellant's property, in that it failed to ascertain whether or not the shares had a market value before finding their actual value.

Section 7 of the act of March 6, 1893, regulating the assessment of express and certain other companies, whether incorporated or not, reads in part as follows:

"Said state board of tax commissioners shall first ascertain the true cash value of the entire property owned by said * * * company; * * * from said statements or otherwise, for that purpose taking the aggregate value of all the shares of capital stock, in case said shares have a market value, and in case they have none, taking the actual value thereof."

No question of fraud or discrimination is raised; the sole basis of the attack is appellant's contention that under section 7, "if there is a market value for any of the shares of such company on the 1st of March, the board is required to take the aggregate of all the shares, that is, to multiply the value per share of such shares as have a market value by the total number of shares"; that the board made no inquiry as to whether there was such a market value, but investigated only as to whether or not there was a market value of all the shares; that in fact there was a market value for some shares, and if the calculation had been based thereon, the resulting true cash value of the company's property would have been much less than the amount found by the board to be the actual value of all the stock.

In our judgment, however, appellant's contention as to the interpretation of section 7 is not to be supported. The investigation into market values was for the purpose of finding the "true cash value," not of shares owned by and to be assessed against individuals, but "of the entire property owned by the company," represented in this case by 120,000 shares. The inquiry to be made is not whether on or about

March 1st a single share or a 100-share lot was bid, offered, or sold, and at what price, on the New York Stock Exchange, and, on the other hand, not whether a purchaser could have been found for the entire 120,000 shares offered in a single lot, but whether, at that time, all of the shares of the company in the aggregate had a market value.

This inquiry the board made; it ascertained the total sales of this stock on the New York Stock Exchange where it was listed (in each of the years ending March 1, 1909, and 1910, less than 610 shares), the prices at which they had been sold, the bid and asked prices during this period, and the days on which bid and asked quotations were made. The investigation showed that there was a market price on some days, other than March 1st, however, for some small part of the stock; the board determined that there was no market value for all the shares in the aggregate. As counsel for appellant, in a letter presented to the state board five years before, very aptly said:

"Calculations based on sales of a few shares of stock are misleading and the result is artificial. I suppose that hardly 1,000 shares of Adams were sold last year; that does not mean a market price for 120,000 shares."

As we concur fully in the board's conclusion, it is unnecessary to decide whether its action in this respect, even if erroneous, would be a proper subject-matter for judicial review.

Decree affirmed.

NOTE.—Judge SEAMAN concurred in the decision for the reasons stated in the foregoing opinion. He did not, however, read the opinion.